## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELISABETH BOEYNAEMS, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 10-2326 |
| LA FITNESS INTERNATIONAL, LLC | : | |

_____

| | | |
|---|---|---|
| JOSHUA VAUGHN | : | CIVIL ACTION |
| | | |
| v. | : | |
| | | |
| LA FITNESS INTERNATIONAL, LLC | : | NO. 11-2644 |

### MEMORANDUM RE: MOTIONS TO DISMISS AND CONSOLIDATE

**Baylson, J.**                                                    **September 12, 2011**

### I.      Introduction and Procedural History

Plaintiffs in these cases signed contracts to become "members" of a health/fitness

organization, and allege that they thereafter encountered difficulties and breaches concerning

their desire to terminate their membership.  Because the agreements themselves have been filed

of record, and their terms are undisputed, the Court is obliged to consider the legal consequences

of these agreements in more detail than might ordinarily be the case on a Rule 12 motion to

dismiss the Complaint.

On November 19, 2010, the Court held oral argument in Boeynams v. LA Fitness

International, LLC, No. 10-2326 (ECF No. 21), to consider Defendant's Motion to Dismiss

Plaintiffs' Amended Complaint Class Action Complaint (No. 10-2326, ECF No. 9).  The

argument only addressed the Boeynams case.  Following the argument, Plaintiffs Elisabeth

Boeynaems, et al. (the "Boeynaems Plaintiffs") filed a Second Amended Class Action Complaint

on January 31, 2011 (No. 10-2326, ECF No. 25).

A Motion to Dismiss Plaintiffs' Second Amended Complaint was filed in <u>Boeynams</u> February 28, 2011 (No. 10-2326, ECF No. 26).  The <u>Boeynaems</u> Plaintiffs filed a Response on March 30, 2011 (No. 10-2326, ECF No. 27).  Defendant LA Fitness ("Defendant's") replied on April 15, 2011 (No. 10-2326, ECF No. 26).

These motions have been held open because of the transfer of <u>Vaughn</u> from the Middle District of Florida (No. 11-2644, ECF No. 2).  Defendant had filed a Stipulation of Acceptance of Service and Transfer on April 13, 2011 (M.D. Fla. No. 11-457, ECF No. 10), stating that "the allegations in Plaintiff's lawsuit are virtually identical" to those asserted in <u>Boeynams</u>. Stipulation at ¶ 2.

On May 3, 2011, Plaintiff Joshua Vaughn ("Vaughn") filed a Motion For Consolidation of Actions (No. 11-2644, ECF No. 2).  After a telephone conference, the Court issued a May 25, 2011 Order setting out a schedule for Defendant to respond to the <u>Vaughn</u> Complaint and ordering that Vaughn incorporate by reference the "arguments and citations previously presented to the Court" in <u>Boeynams</u>.

On June 14, 2011, Defendant filed a Motion to Dismiss in <u>Vaughn</u> (No. 11-2644, ECF No. 8).  Vaughn responded on July 6, 2011 (No. 11-2644, ECF No. 11), and Defendant filed a reply on July 13, 2011 (No. 11-2644, ECF No. 12).

Although the motions before the Court are Motions to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), because the Plaintiffs have attached the relevant

contracts to their respective Complaints, the Court can consider these contracts in ruling on the breach of contract claims.[1]

The Court will grant Defendant's Motion to Dismiss as to Plaintiffs Elisabeth Boeynaems ("Boeynams") and Harvey J. and Serena L. Cohen (collectively "the Cohens") with prejudice, but will grant in part and deny in part Defendant's Motion to Dismiss as to Kenneth Silver ("Silver"). In Vaughn, the Court will grant in part and deny in part as to Vaughn. The Motion to Consolidate the two cases will be granted. The Court entered an Order to this effect on August 18, 2011 (No. 10-2326, ECF No. 32).

## II.   Facts

### A.   LA Fitness and the Agreement

Defendant LA Fitness operates over 275 fitness clubs throughout the United States and Canada with over 1,000,000 members. Boeynams Second Am. Compl. ("Boeynams Compl.) at ¶ 17. New LA Fitness members may enroll by paying an entire year's dues up front or under a "Monthly Dues Membership Agreement" ("the Agreement"). Id. at ¶ 18. See Boeynams Pl.'s

---

[1] Plaintiffs have attached the relevant Agreements with LA Fitness to their Complaints. See Boeynams Compl. Exs. A, B. On a motion to dismiss, courts consider the complaint, its exhibits, matters of public record, and documents that form the basis of a claim. See Lum v. Bank of Am., 361 F.3d 217, 221 n. 3 (3d Cir. 2004). Documents that form the basis of a claim include those that are integral to or explicitly relied on in the complaint. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). Documents are integral when the plaintiff's claims are based on the document. See In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 368 n. 9 (3d Cir. 1993); see also Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"). The Court will consider the Agreements attached to Plaintiffs' Complaints as they are integral to the complaint.

Exs. A and B.  Enrolling under the Agreement, members pay an initial fee, first month's dues, and a prepaid last month's dues.  Id. at ¶ 19.  Members must provide a credit card or bank account that LA Fitness charges monthly through an electronic fund transfer ("EFT").  Id.

The Agreement informs members that "monthly dues will be billed and collected once a month beginning on [START DATE] and continuing on the same day each month until terminated in the manner provided below."  Id.  Older Agreements  sets out the cancellation procedure, as follows:

> How to stop your monthly EFT billing: If there is no back dues or a balance due on your membership, you may stop billing of the monthly dues through EFT and cancel your membership by providing the written notice of your request at least thirty days prior to your next billing date: Send the written notice to LA Fitness, P.O. Box 54170, Irvine, CA 92619-4170.  If the notice is postmarked at least 30 days prior to your next billing date, no further billing will occur.  If the notice is postmarked less than 30 days prior to your next billing date one or more billing will occur.

Id. at ¶ 20; see Boeynams Pls.' Ex. A. (Emphasis added).  Newer agreements require 20 day notice before the next billing date to avoid being billed an additional month.  Id. at ¶ 21; see Boeynams Pls.' Ex. B.   Members located in the state of California need only provide 5 days notice.  Ex. C at 1.

The older agreements state that, whether or not the cancellation notice is timely mailed with 30 days notice, a member's "last month's prepaid dues will extend [the members'] membership expiration by an additional 30 days or more, depending on [the] original sign up date."  Id. at ¶ 20; see Boeynams Pls.' Ex. A.  The language of the newer agreements similarly provide that, regardless of whether a member's cancellation notice is timely postmarked, a member's "last month's prepaid dues will be applied for [the member's] final monthly dues

payment, extending [the] membership at least an additional 30 days, at which time [the] membership will expire." Id.  Thus, under either agreement, the membership agreement binds the member to a membership term of at least 3 months, unless the member cancels on the date on which the member joins.  Id. at ¶ 25.

The Agreement requires written notice of cancellation.  Id. at ¶ 33; see Boeynams Pls.' Exs. A, B.  While the Agreement contains no reference to the form of the writing, LA Fitness also apparently requires that cancellation be submitted on a pre-printed form, which can be obtained at LA Fitness locations or, with potentially some difficulty, online.  Id. at ¶¶ 33-34.

### B.    *Boeynaems* Plaintiffs

Each of the Boeynaems Plaintiffs is a resident of Pennsylvania.  Id. at ¶¶ 11-14.  Each entered into a monthly Agreement with LA Fitness (hereinafter referred to collectively as "the Agreement").  Id. at ¶ 58, 63, 68.  Each paid monthly dues via EFT from a credit card account. Id. at ¶¶ at 59, 65, 70.  The terms of the monthly agreements are substantially the same, including the requirement to prepay the first and last month's dues, except where specified.

#### 1.    Elisabeth Boeynaems

Plaintiff Elisabeth Boeynaems entered an Agreement "on or about July 17, 2006," at which time she paid a total of $144.98.  Id. at ¶ 58.  Boeynaems paid her monthly dues by EFT from her husband Steven Bilgram's credit card account on or about the fifteenth day of each month.  Id. at ¶ 59.

At the end of August 2006, Boeynaems's husband inquired with LA Fitness staff about cancelling his wife's membership and was informed that she would have to come to the club to cancel.  Id. at ¶ 60.  Boeynaems was not able to go to the club until one week later.  Id.  When

she arrived, she was informed that she would have to provide a cancellation form to LA Fitness's Irvine, California corporate headquarters ("California corporate headquarters") and was provided with a form.  Id.

In approximately mid-September 2006, Boeynaems provided written cancellation notice to LA Fitness on the company's pre-printed form.  Id. at ¶ 61.  LA Fitness charged Boeynaems $34.99 on or about October 16, 2006, and then applied her prepaid last month's dues.  Id.  Thus, Boeynaems's membership was extended until approximately December 15, 2006.  Id.  Boeynaems alleges that she was overcharged at least $34.99 by LA Fitness.  Id.

## 2.  Harvey J. and Serena L. Cohen

Plaintiffs Harvey J. and Serena L. Cohen, husband and wife, entered an Agreement "at or about the time LA Fitness opened its gym in Bensalem, PA."  Id. at ¶ 63.  Their monthly dues were $31.00 per member.  Id.

In late December 2008, Harvey Cohen called the Bensalem, Pennsylvania LA Fitness location to cancel the Cohens' memberships.  Id. at ¶ 65.  At that time, he was informed by LA Fitness staff that he would need to use the preprinted form provided at the Bensalem location.  Id.  Harvey Cohen was not able to travel to the LA Fitness location until the first week of January 2009, at which time LA Fitness gave him the cancellation forms.  Id.

In approximately mid-January 2006, Harvey Cohen provided written cancellation notice to LA Fitness on the company's preprinted form.  Id.  LA Fitness charged the Cohens $62.00 on or about February 1, 2009, and then applied their prepaid last month's dues.  Id. at ¶ 66.  Thus, Cohens' membership extended until approximately April 1, 2009.  Id.  The Cohens allege that they were overcharged at least $62.00 by LA Fitness.  Id.

### 3.    Kenneth J. Silver

Plaintiff Kenneth J. Silver entered an Agreement on or about May 21, 2010.  Id. at ¶ 68.

Silver signed one of the newer Agreements that required 20 days notice prior cancellation, as

distinct from the Plaintiffs discussed above.  Id. at ¶ 21.  At that time, he paid an initiation fee of

$25.00, plus his first and last months' dues for a total of $114.98.  Id.  Silver's monthly dues

were $44.99, which he paid by EFT from a Visa credit card on or about the twentieth day of each

month.  Id. at ¶ 70.  The LA Fitness salesperson failed to provide Silver with a copy of his

Agreement and LA Fitness has consistently failed to do so, despite repeated requests.  Id. at ¶ 69.

Silver intended to terminate his membership at the end of June 2010.  Id. at ¶ 68.  Silver

first inquired about cancelling his membership at the time he entered into the Agreement, on or

about May 21, 2010.  Id. at ¶ 71.  Silver informed the LA Fitness salesperson that he was a

college student on a summer break and that he would be returning to school in State College,

Pennsylvania, in late June 2010.  Id.  Since there are no LA Fitness locations in that area, Silver

would not be able to use his membership and explained that he only wanted to pay for two

months of dues.  Id.  He asked what steps he would need to take to cancel his membership so as

not to incur payments beyond the time he would have access to the gym.  Id.

At that time, the LA Fitness salesperson failed to disclose the requirement that Silver

send a notice of cancellation on LA Fitness's preprinted form, and that Silver would have to send

his notice of cancellation by Saturday, May 29, 2010, to avoid paying more than two months of

dues.  Id. at ¶ 72.  Instead, the LA Fitness staff person told Silver that he could cancel at any time

and that he would just need to come to the gym when he was ready to return to school.  Id. at ¶

73.

On or about June 25, 2010, Silver traveled to the Bala Cynwyd, Pennsylvania LA Fitness location and requested that his membership be cancelled.  Id. at ¶ 74.  At that time, an LA Fitness staff member stated that the location was having difficulty with their computer system, so they could not print or provide Silver with a preprinted cancellation form.  Id.  The staff member asked Silver to sign a form, but did not give him a copy, and represented to him that she would process his cancellation by sending the form to the California corporate headquarters when the computers were working.  Id.  Mr. Silver returned to State College believing that his membership had been cancelled.  Id.

In early November 2010, Silver discovered that his membership had never been cancelled and that he was still being billed monthly dues.  Id. at ¶ 75.  Silver's father wrote a letter to the California corporate headquarters requesting 1) cancellation, 2) a refund for charges billed after June 2010, and 3) a copy of the Agreement.  Id.  The letter was returned as undeliverable.  Id.  Silver's father also mailed in a cancellation form and followed up with telephone calls to confirm cancellation and request a copy of the Agreement.  Id.  Silver additionally filed a Better Business Bureau complaint, to which LA Fitness responded that Silver had not attempted to cancel his membership prior to November 2010.  Id. at ¶ 77.  LA Fitness provided Silver with a refund for September and October 2010 dues, but Silver was not able to obtain a refund for July and August 2010 dues.  Id. at ¶ 78.

### C.   **Plaintiff Joshua Vaughn**

Vaughn entered into an Agreement with LA Fitness on January 25, 2008, at an Orlando, Florida location.  Vaughn Compl. at ¶ 56.  At that time, Vaughn paid an initiation fee, plus first and last months' dues.  Id.  His dues were initially $34.99, but later increased to $37.26.  Id.

Vaughn paid his dues through EFT from a bank account.  Id. at ¶ 57.  His billing date changed from month to month, including the following dates: August 17 and September 17, 2010; October 18, 2010; December 6, 2010; January 3, 2011; February 2, 2011; and February 16, 2011.  Id.

In late July or early August 2010, Vaughn inquired about cancelling in person at the Orlando location.  Id. at ¶ 58.  He was then informed about the requirement to cancel by preprinted form sent to the California corporate headquarters.  Id.  Vaughn obtained the form on the date of his inquiry and sent it via United States mail on the following day.  Id.  The notice of cancellation was postmarked more than 30 days before the September 17, 2010 billing date.  Id.

Vaughn moved to Portland, Oregon, at the end of August 2010.  Id.  Because he had a "single club" membership with LA Fitness, he was not able to use his membership at the Portland LA Fitness facilities.  Id.

Vaughn reviewed his monthly bank statement on approximately February 14, 2011, and realized that LA Fitness had continued to bill Vaughn monthly via EFT for the period between September 2010 and February 2011, despite Vaughn having sent in the preprinted cancellation form.  Id. at ¶ 61.

Having been unable to find contact information for the California corporate headquarters, Vaughn telephoned the Orlando gym.  Id. at ¶ 63.  During that conversation, Vaughn was eventually told that LA Fitness would cancel the membership immediately, but that the company would only refund his "most recent billing."  Id.

On February 15, 2011, Vaughn received an email from LA Fitness stating that his final EFT billing date would be February 16, 2011, and that his membership would expire on February

15, 2011.  Id. at ¶ 64.  On February 18, 2011, LA Fitness confirmed via email that the company

would only refund Vaughn $37.26 – the amount billed on February 16, 2011.  Id. at ¶ 65.

Vaughn alleges that he was overcharged for at least seven months because, based on the

language of the contract, he would have expected his dues to stop in August 2010.  Id. at ¶ 66.

### D.      **Plaintiffs' Allegations**

#### 1.      **Boeynaems**

On January 31, 2011, Plaintiffs filed a Second Amended Class Action Complaint against

LA Fitness for breach of express contract and of the implied duty of good faith and fair dealing;

violations of the Health Club Act ("Health Club Act") 73 Pa. Cons. Stat. Ann. §§ 2161, et seq.

and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S.

§§ 201-1 et seq.; and unjust enrichment.  No. 10-2326; ECF. No. 7.

Plaintiffs object generally to the following aspects of  LA Fitness's cancellation policy: 1)

the 20- or 30-day cancellation notice policy; 2) the requirement that members mail in a

pre-printed form available primarily at LA Fitness locations; 3) the one month dues penalty for

members who do not give the proper notice; 4) a policy charging members at enrollment for the

last month's fee, which is then applied to the month following the date the member provides

cancellation notice; and 5) policies preventing cancellation in person, by email, or on the internet.

Plaintiffs' Complaint alleges that LA Fitness is in breach of the Agreement because

1)      LA Fitness "systematically" ignores members' written cancellation notices,
        Boeynams Compl. at ¶¶ 36;

2)      the requirement of a preprinted form is not stated in the Agreement and is
        intended to impede or delay cancellation, id. at ¶¶ 33-35;

3)      the Agreements are not "monthly," but, instead, obligate members to a term of
        three months, id. at ¶¶ 25-25;

4)      the application of prepaid last month's dues contradicts the stated promise that "no further billing will occur" after timely mailing of cancellation notices, id. at ¶¶ 29-31;

5)      the application of the prepaid last month's dues extends the membership and requires cancellation at least 51 or 61 days in advance, rather than the stated 20 or 30 days, id. at ¶¶ 26-28; see also id. at ¶¶ 91-96.

Plaintiffs also allege that the Agreement violates the Health Club Act and Pennsylvania's UTPCPL.  Plaintiffs have asserted claims under the following Sections of the Health Club Act: 2163(d), which requires that a "health club contract" be signed and a copy provided to the member; 2164, which precludes the inclusion of an automatic renewal clause in "health club contract[s]", and 2169, which allows a member to void a "health club contract" entered into based on "false or misleading information."   Id. at ¶¶ 106-10.  Plaintiffs further assert a claim under Section 2175(a), which provides that a violation of the Health Club Act will also constitute a violation of the UTPCPL.  Id. at ¶¶ 111-15.

Finally, Plaintiffs plead, in the alternative, that LA Fitness has been unjustly enriched through the collection of monthly membership dues that it was not entitled to collect, for the same reasons set forth as the basis of the breach of contract, entitling Plaintiffs to restitution.  Id. at ¶ 122.

Plaintiffs seek certification as a proposed class, and damages, declaratory, and injunctive relief.  Id. at pp. 40-41.

**2.      *Vaughn* Allegations**

On March 4, 2011, Vaughn filed his Complaint against LA Fitness in the Middle District of Florida.  See Vaughn Compl. (ECF No. 1, No. 11-457).  Vaughn brings a virtually identical claim to that of the Boeynams Plaintiffs for breach of contract and of the implied duty of good

faith and fair dealing.   <u>Vaughn</u> Compl. at ¶¶ 20-89.  Vaughn's Complaint differs in one notable

respect, namely that Vaughn timely complied with Defendant's requirement for written notice of

cancellation, but Defendant neither effectuated the cancellation for six months, nor refunded the

additional months charged.  <u>Id.</u> at ¶¶ 66-67; 77-89.  In addition, Vaughn has brought a claim

under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et

seq., <u>id.</u> at ¶¶ 90-105; and a claim of unjust enrichment, <u>id.</u> at ¶¶ 106-110, both of which mirror

the statutory and unjust enrichment claims brought by the <u>Boeynaems</u> Plaintiffs.

**III.   <u>Legal Standards</u>**

    **A.   <u>Jurisdiction</u>**

This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of

2005 ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship

from at least one defendant; there are more than 100 class members nationwide; and the

aggregate amount in controversy exceeds $5 million. This Court has personal jurisdiction over

the parties because LA Fitness maintains offices and conducts business in the Commonwealth of

Pennsylvania.

    **B.   <u>Motion to Dismiss Standard</u>**

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to

state a claim upon which relief can be granted."  The Court must accept as true all well-pleaded

allegations in the complaint and view them in the light most favorable to the plaintiff.   Phillips

v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it

complies with Rule 8(a)(2), which requires a "short and plain statement of the claim showing that

the pleader is entitled to relief."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (concluding that the "facial plausibility" pleading standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), applies to all civil suits in the federal courts) (quoting Twombly, 550 U.S. at 570).

In Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), the Third Circuit described Iqbal as requiring a two-part analysis when considering a Rule 12(b)(6) motion.  First, a court separates the facts averred in the complaint from any legal conclusions asserted therein. Fowler, 578 F.3d at 210-211.  All facts pleaded must be taken as true, but any legal conclusions may be disregarded.  Id.  Second, the court determines whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 211 (quoting Iqbal, 129 S. Ct. at 1950).

Pleadings must include at least some factual allegations to support the legal claims asserted.  Id. at 210. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Iqbal, 129 S. Ct. at 1949); see also Phillips, 515 F.3d at 233.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims.  Iqbal, 129 S. Ct. at 1949; Phillips, 515 F.3d at 234.  Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

### C.     Choice of Law

When exercising diversity jurisdiction, this Court must look to the choice of law rules of Pennsylvania - the state in which the Court sits.  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Berg Chilling Sys. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006).  Under Pennsylvania choice-of-law rules, a court must first ask "whether the parties explicitly or implicitly have chosen the relevant law" and give effect to the parties' agreement.  Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161, 164 (3d Cir. 1999).  The parties have agreed that Pennsylvania law governs the action in Boeynams, and Florida law governs the action in Vaughn.

### IV.    Parties' Contentions

### A.     Defendant's Contentions

Defendant makes several arguments for dismissal of Plaintiffs' breach of contract claims. In essence, while conceding that Vaughn has stated a claim with regard Defendant's failure to timely process his cancellation notice, Defendant contends that LA Fitness has complied with the express terms of its Agreements with Plaintiffs.  Defendant argues that the actions Plaintiffs point to as necessary to remedy Defendant's breaches are simply attempts to reform the contracts. Furthermore, Defendant contends that, under both Florida and Pennsylvania law, Plaintiffs cannot state a claim for breach of the implied duty of good faith and fair dealing where Plaintiffs are unable to point to a breach by Defendant of the parties' Agreements.

As to Plaintiffs' statutory claims, Defendant contends that the claims alleged by the Boeynams Plaintiffs under the Health Club Act should be dismissed because the provisions relied upon by Plaintiffs only apply to "health club contracts," which do not apply to Plaintiffs'

member Agreements.  Defendant contends that the <u>Boeynams</u> Plaintiffs' claims under the catch-all provision of the UTPCPL are barred by the economic loss rule.  Defendant further contends that LA Fitness has acted in accordance with the terms of its Agreements with Plaintiffs and has done nothing deceptive.  Defendant contends that Vaughn's claim under the FDUPTA should be dismissed for the same reasons as the <u>Boeynams</u> Plaintiffs' UTPCPL claims.

Finally, Defendant contends that Plaintiffs may not assert claims for unjust enrichment where an express contract governs the relationship between the parties.

### B.     <u>Plaintiffs' Contentions</u>

Plaintiffs respond to Defendant's contentions regarding the breach of contract and of implied duty of good faith and fair dealing claims by repeating the comprehensive allegations made in Plaintiffs' complaints, as described above and discussed in more detail below.

Regarding claims under the Health Club Act asserted by the <u>Boeynams</u> Plaintiffs, Plaintiffs contend that the definition of "health club contract," pursuant to Section 2162 of the Act, covers the parties' Agreements.  In support, Plaintiffs rely on the transcript of the November 19, 2010 hearing in which the Court engaged in colloquy with the parties on the question of whether the Act applies to the Agreements.  Plaintiffs point as well, to the references within the Agreement itself to the Health Club Act and the inclusion of certain provisions required by the Act to be included in "health club contracts," as well as the stated remedial purpose of the statute.  Plaintiffs further restate the allegations contained within their Second Amended Complaint that the contractual provisions and conduct by LA Fitness that provide the bases for their breach of contract claims can also provide the basis for a claim under Section 2169 of the Act.  Plaintiffs further restate their allegations of violations of Sections 2164 and 2163(d), and

assert that these violations also constitute violations of the UTPCPL.  However, Plaintiffs do

state that they have asserted "no independent Count" under the catch-all provision of the

UTPCPL  Boeynams Pls. Resp. Br. at 31 n. 21.

Finally, Plaintiffs respond that Plaintiffs are allowed to plead alternative causes of action

for unjust enrichment and breach of contract as long as they choose to prove only one at trial.

**V.**   **Discussion**

**A.**   **Breach of Contract and of the Implied Duty of Good Faith and Fair Dealing**

**1.**   **Definition of Breach under Pennsylvania and Florida Law**

Under Pennsylvania law, a breach of contract action involves (1) the existence of a

contract, (2) a breach of a duty imposed by the contract, and (3) damages.  Sullivan v. Chartwell

Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005).   Florida law imposes the same

requirements of a "(1) a valid contract; (2) a material breach; and (3) damages."  Schiffman v.

Schiffman, 47 So. 3d 925, 927 (Fla. Dist. Ct. App. 2010) (quoting Abbott Labs., Inc. v. Gen.

Elec. Capital, 765 So. 2d 737, 740 (Fla. App. 2000)).  There is no dispute that each Plaintiff

entered into a valid member Agreement with LA Fitness.  Thus, the only issues before this Court

are whether Plaintiffs have alleged sufficient facts to support claims of breach and resultant

injury.

Under Pennsylvania law, "[t]he fundamental rule in interpreting the meaning of a contract

is to ascertain and give effect to the intent of the contracting parties."  Murphy v. Duquesne Univ.

of the Holy Ghost, 777 A.2d 418, 429 (Pa. 2001) (citing Robert F. Felte, Inc. v. White, 302 A.2d

347, 351 (Pa 1973)).  The Court must view the intent of parties as have been "embodied in the

writing itself[,]" taking into account the entirety of the written instrument.  Id. (citing Steuart v.

-16-

McChesney, 444 A.2d 659, 661 (Pa. 1982); <u>Felte</u>, 302 A.2d at 351).  "Courts do not assume a contract's language was chosen carelessly, nor do they assume the parties were ignorant of the meaning of the language employed."  <u>Crawford Cent. Sch. Dist. v. Commonwealth</u>, 888 A.2d 616, 623 (Pa. 2005) (citing <u>Murphy</u>, 777 A.2d 418 at 429).  "'When a writing is clear and unequivocal, its meaning must be determined by its contents alone.'"  <u>Robertson v. Drexel University</u>, 991 A.2d 315, 318 (Pa. Super. Ct. 2010) (citing <u>Murphy</u>, 777 A.2d at 429).  "Although parties may disagree as to the interpretation of contract provisions, such a dispute will not necessarily render a contract provision ambiguous."  <u>De Lage Landen Financial Services, Inc. v. Rasa Floors, LP</u>, No. 08-533, 2011 WL 3290167 at *9 (E.D. Pa. July 28, 2011) (Baylson, J.) (citing <u>PSC Info Group v. Lason, Inc.</u>, 681 F. Supp. 2d 577, 585 (E.D. Pa. 2010)).

### 2. Vaughn Has Stated a Claim for Failure to Timely Process Cancellation, But the Remaining Plaintiffs Have Not Done So

Plaintiffs allege that LA Fitness breached their Agreements by "systematically" ignoring members' written cancellation notices, whether or not they were printed on the preprinted form. Defendant concedes that Vaughn has stated a breach of contract claim against Defendant regarding the processing of his membership cancellation.  Thus, this Court recognizes that Vaughn can proceed on this breach of contract theory.

None of the <u>Boeynaems</u> Plaintiffs, however, have stated claims for breach regarding the processing of cancellations.  Boeynaems and the Cohens each state that they sent in their cancellations using the required preprinted form.  None of these Plaintiffs have averred facts supporting the allegation that the LA Fitness corporate office ignored the preprinted forms that Plaintiffs sent to the corporate office or in any way delayed processing of their cancellations. Further, none have averred they were charged any additional months' fees after Defendant

processed their cancellations.[2]  Thus, none of these Plaintiffs have alleged a material breach or

injury under this theory.

As to Silver, he alleges only that an LA Fitness staff member represented that he would

send in a cancellation form, but Silver himself did not do so until November 2010.  Boeynams

Compl. at 76-77.  While it is unclear on what date LA Fitness cancelled Silver's membership, the

company does not appear to have billed Silver for November 2010 and refunded Silver's

membership dues for the prior two months, September and October 2010.  Silver has not averred

facts to support the allegation that LA Fitness ignored his cancellation notice, and, thus, he has

not alleged a material breach or injury based on a failure to process his cancellation notice and

may not proceed under this theory.

> ### 3.  Silver Has Stated a Claim Based on the Requirement of the Use of Preprinted Cancellation Forms, But the Remaining Plaintiffs Have Not Done So

The Agreement states that a member shall stop his or her EFT billing and cancel

membership by providing "written notice" of a member's cancellation request either 20 or 30

days prior to the monthly billing date, depending on whether the member signed an older or

newer form of the Agreement.   Pls. Exs. A, B.  The requirement that cancellation of LA Fitness

memberships be processed by use of a preprinted form that is obtainable online or at LA Fitness

locations is not included in the contract.  In fact, the Agreement contains no reference to the

required use of a preprinted form.  The Agreement does state that members are "purchasing a

---

[2]Plaintiffs do allege that Defendant applied their last months' dues at the termination of
their respective Agreements, which the Court will address below.

membership from LA Fitness according to the terms . . . of this Membership Agreement and the current Membership Policies and Club Rules and Regulations[.]"   Pls. Exs. A, B.

Plaintiffs allege that the undisclosed requirement contradicts the terms of the Agreement and causes delay in the ability to cancel a membership, allowing LA Fitness to charge additional fees after services are no longer desired.  Boeynams Compl. at 95.  Plaintiffs state that each Plaintiff was required to "make several time-consuming inquiries" in order to learn of the form, travel to their gym to obtain the form, and, then, mail the form to LA Fitness's corporate office. Boeynams Pls. Resp. Br. at 15.  Based on those facts, Plaintiffs allege that the "extra undisclosed requirement" demonstrates that LA Fitness "clearly intended to delay cancellations and cause[] customers to incur more billings."  Id.  However, the preprinted form requirement could be considered among the "Membership Policies and Club Rules and Regulations" to which a member commits to comply upon signing the Agreement.  However, viewing the facts in the light most favorable to Plaintiffs, the Court finds that, by imposing the additional undisclosed requirement, LA Fitness may be in breach if it failed to honor a timely "written notice" sent in compliance with the terms of the Agreement and caused injury.

However, the Court finds that this was not the case for Plaintiffs, with the exception of Silver.  Each of the Plaintiffs, except Silver, sent in their cancellation notices on the preprinted form.  Vaughn alleges no difficulty in obtaining the form from LA Fitness.  Vaughn Compl. at ¶ 58-59.  Boeynams alleges that LA Fitness staff informed her husband that she would have to cancel in person, but was provided a form when she arrived.  Boeynams Compl. at ¶ 60.  She alleges that she was not able to go to the club until a week after her husband called, id., but Boeynams's own delay cannot be considered a breach by Defendant.  Furthermore, Boeynams

does not indicate in the Complaint that she timely mailed the notice after receiving a copy of the form. Id. The Cohens alleged only that they were unable to cancel their memberships by phone and that the "busy holiday season" delayed their travel to their LA Fitness location to obtain the form. Boeynams Compl. at ¶ 65. However, the Cohens did not allege that they attempted to comply with the terms of the Agreement by sending a "written notice" in compliance with the terms of the Agreement that was ignored by Defendant. Nor, can the Court infer breach by Defendant based on delay caused by the "busy holiday season." Finally, none these Plaintiffs allege that they incurred any injury by use of the preprinted forms. Thus, these Plaintiffs can not state a claim under this theory.

However, the Court finds that Silver has stated a claim. Silver alleges that he was delayed by the requirement that he cancel by use of the preprinted form because LA Fitness was unable to provide a form to him when he desired to cancel his membership on June 25, 2010 Boeynams Compl. at ¶¶ 71-79. Construing the facts in the light most favorable to Silver, that he 1) would have timely sent in a notice of cancellation had he been able to cancel in writing in any "written form," consistent with the terms of the Agreement; or 2) would have obtained the form when requested and canceled on the date originally intended, a jury might reasonably infer from the facts asserted that LA Fitness breached the Agreement by failing to allow Silver to comply with the terms of the Agreement. Furthermore, Silver was charged at lease one month's additional dues because of his inability to obtain a form or provide written notice through other means. Thus, the Court finds that Silver has alleged facts sufficient to reasonably infer both a breach and resultant injury based on this theory.

    **4.**      **Plaintiffs Fail to State a Claim for Breach of Contract Regarding Defendant's Policy of Applying the Prepaid Last Month's Fee**

The parties' Agreements state that, if a member timely mails a notice of cancellation – either 20 or 30 days prior to the next billing date depending on the Agreement – "no further billing will occur." Pls.' Exs. A, B. The Agreements go on to state that, whether or not the cancellation notice is timely mailed, LA Fitness will apply the member's prepaid final month's dues to "extend [the member's] membership expiration by an additional 30 days or more." Pls.' Exs. A; <u>see also</u> Pls.' Ex. B (The "last month's prepaid dues will be applied for [the member's] final monthly dues payment, extending [the] membership at least an additional 30 days, at which time [the] membership will expire.").

In part based on the above the language, Plaintiffs aver that they understood their Agreements with Defendant to be "monthly contracts," which could be cancelled without billing of further dues by providing a timely cancellation request. <u>Boeynams</u> Pls.' Resp. Br. at 19. Plaintiffs aver that they understood the "no further billing" language to indicate LA Fitness's intention to apply the prepaid last month's dues to the month in which the member provided a timely notice of cancellation. Plaintiffs allege that the cancellation provisions are ambiguous and that LA Fitness has construed these provisions in its own favor to apply the last month's dues to extend the membership for an additional 20 or 30 days beyond the notice period.

The Court finds that the language of the Agreement is clear and unambiguous despite Plaintiffs' alternative interpretation of the Agreement's cancellation policy. If a member provides a timely notice of cancellation – postmarked either 20 or 30 days in advance of the next billing date – the Agreement obligates LA Fitness not to charge a member any additional fees. However, the provision that a member's prepaid last month's dues will be paid up front and

applied as to "extend [the] membership by an additional 30 days or more" once a member has

cancelled the membership is clearly set out in the terms of the contract.  Thus, the Agreement

informs members explicitly that the prepaid fee will be charged up front, but will not be applied

until a cancellation notice is received.  The application of the prepaid last month's fee, paid at the

beginning of the contract, is not an additional charge because the member has already paid that

month's fee.  Furthermore, even if a member sends a timely notice of cancellation 20  to 30 days

in advance of the <u>next</u> billing date, presumably LA Fitness has already charged the member for

the month during which the notice of cancellation is received.  If the Court were to adopt

Plaintiffs' interpretation and require LA Fitness to apply the last month's dues to the month

during which the notice is received, LA Fitness would have to refund the prior month's billing

and apply the last month's dues or know in advance of receipt of the cancellation notice that a

member intended to cancel during that month.  To require LA Fitness to do so would constitute a

reformation of the Agreement.  The Court finds that none of the Plaintiffs in either action can

state a claim under this theory.

### 5.    Plaintiffs Fail to State a Claim for Breach of Contract Regarding The 20 or 30-Day Cancellation Notice Requirement

Plaintiffs allege, in essence, that, based on LA Fitness's interpretation of the contract, a

member must provide 51- or 61- days notice in order for access to LA Fitness facilities to cease

on the day the member wishes them to.

As discussed above, the requirement that members must give 20  or 30 days notice prior

to the next billing date is set out clearly in the terms of the contract, as is the LA Fitness policy of

applying the prepaid last month's dues to the final month of the membership.  Plaintiffs have

alleged no facts upon which this Court can reasonably infer that Defendant breached the terms of

the Agreement or that Plaintiffs suffered injury as a result of this policy.  Only Vaughn alleges a

specific date upon which he sent in his cancellation.  Yet, he complied with the notice

requirement and does not describe any injury related to that requirement.  Boeynams and the

Cohens have not provided precise dates upon which they sent in their notices of cancellation and,

thus, do not allege that they complied with the notice requirement.  These Plaintiffs cannot

maintain an action for breach of a contract provision with which they themselves did not comply.

Finally, Silver alleges that he was misinformed about the notice requirement by LA

Fitness staff and about the staff member's promise to timely send in his cancellation notice.

However, it was the failure of the LA Fitness staff member in assisting Silver to comply with the

notice requirement, not the notice requirement itself, which led to Silver having been charged

additional fees by LA Fitness.  None of the actions taken by the LA Fitness staff member

establish a breach of the Agreement or an injury incurred by Silver as a result of breach.  Thus,

the Court finds that Plaintiffs cannot state a claim for breach of contract under this theory.

### 6.    Plaintiffs Cannot Assert an Independent Claim of Breach Of the Implied Duty of Good Faith and Fair Dealing

While the Boeynams Plaintiffs have not asserted an independent claim of breach of the

implied duty of good faith and fair dealing, they have alleged, as a component of their breach of

contract claims, that such a duty is "implied in the Monthly Dues Membership Agreement

between Plaintiffs and LA Fitness" and was breached by Defendant.  Boeynams Compl. at ¶ 96-

97.  Vaughn makes the same allegations in his Complaint.  Vaughn Compl. at ¶ 85-86.

Section 205 of the Restatement (Second) of Contracts states that "[e]very contract

imposes on each party a duty of good faith and fair dealing in its performance and its

enforcement[.]"  Kamco Indus. Sales, Inc. V. Lovejoy, Inc., No. 09-1407, 2011 WL 891825, at

*7 (E.D. Pa. Mar. 10, 2011) (Pollak, J.) (quoting Ash v. Cont'l Ins. Co., 932 A.2d 877, 884 n. 2 (Pa. 2007)). Many courts sitting in diversity have predicted that the Pennsylvania Supreme Court will adopt Section 205 to hold that every contract includes an implied duty of good faith and fair dealing. See id. at *8 (collecting cases). However, even the Pennsylvania Supreme Court has recognized a conflict amongst Pennsylvania lower courts regarding whether that implied duty creates a cause of action. Id.

As the undersigned discussed at length recently, concerning claims by contracting parties, in Goleman v. York Intern. Corp., No. 11–1328, 2011 WL 3330423 (E.D. Pa. Aug. 3, 2011) (Baylson, J.), "[u]ntil the Pennsylvania Supreme Court holds otherwise, this Court is inclined to conclude there is no independent cause of action for breach of a duty of good faith and fair dealing." Id. at *6-7 (citing Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 617 (3d Cir. 1995)). See also LSI Title Agency, Inc. v. Evaluation Servs., Inc., 951 A.2d 384, 391 (Pa. Super. Ct. 2008) ("This court finds that Pennsylvania law would not recognize a claim for breach of [a] covenant of good faith and fair dealing as an independent cause of action separate from the breach of contract claim since the actions forming the basis of the breach of contract claim are essentially the same as the actions forming the basis of the bad faith claim."). The Court concludes, instead, that "a breach of the implied covenant of good faith and fair dealing merges with a breach of contract claim." Zaloga v. Provident Life and Accident Ins. Co. of Am., 671 F. Supp. 2d 623, 631 (M.D. Pa. 2009) (Kosik, J.) (citing Meyer v. Cuna Mut. Group, No. 03-CV-602, 2007 WL 2907276, at *14-15 (W.D. Pa. Sept. 28, 2007)).

Consistent with the Court's interpretation of Pennsylvania law, the Boeynams Plaintiffs have, in fact, subsumed their allegations of Defendant's breach of the implied duty of good faith

and fair dealing within their breach of contracts claims.  Plaintiffs' allegations regarding the

breach of this implied duty simply incorporate by reference the allegations supporting the breach

of contract claims and Plaintiffs allege no additional facts in support.  The Court has determined

that Boeynams and the Cohens have failed to state a claim for breach of contract and, thus,

cannot raise an independent claim for the breach of the implied duty of good faith and fair

dealing.  To the extent that Silver has stated a claim for breach of contract and attempts to rely on

those identical facts in support for a contractual good faith claim, this Court concludes that such

a claim must merge with Silver's breach of contract claim.

As to Vaughn's claim, while Florida law recognized an implied covenant of good faith

and fair dealing associated with every contract, "a breach of this covenant – standing alone –

does not create an independent cause of action."  Intertape Polymer Corp. v. Inspired

Technologies, Inc., No. 6:09-cv-289-Orl-GAP-GJK, 2010 WL 2776510, at *4 (M.D. Fla. July 14,

2010) (Presnell, J.) (citing Centurion Air Cargo v. UPS Co., 420 F.3d 1146, 1151 (11th Cir.

2005)).  Such a claim must not only attach to the "performance of a specific contractual

obligation," Onuss Ortak Nokta Uluslararasi Haberlesme Sistem Servis Bilgisayar Yazilim

Danismanlik ve Dis Ticaret Limited Sirketi v. Terminal Exchange, LLC, No.

09-80720-CIV-MARRA, 2010 WL 935972, 3 (S.D. Fla. Mar. 10, 2010) (Marra, J.) (citing

Centurion Air, 420 F.3d at 1151; Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,

896 So. 2d 787, 792 (Fla. Dist. Ct. App. 2005)), it "cannot be advanced when the allegations

underlying that claim are duplicative of the allegations supporting the breach of contract

claim[,]" id. (citing Enola Contracting Svcs, Inc. v. URS Group, Inc., No. 5:08cv2-RS-EMT,

2008 WL 1844612, at* 3 (N.D. Fla. Apr. 23, 2008); <u>Trief v. Am. Gen.Life Ins. Co.</u>, 444 F. Supp. 2d 1268, 1270 (S.D. Fla. 2006); <u>Shibata v. Lim</u>, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000)).

As with the allegations in the <u>Boeynams</u> Complaint, Vaughn's allegations underlying the breach of the implied duty of good faith and fair dealing are identical to those supporting Vaughn's claim for breach of contract.  Thus, to the extent Vaughn attempts to rely on the facts underlying his breach of contract claim to support a good faith claim, he cannot do so.

Accordingly, the Court has granted Defendant's Motion to Dismiss Count I in <u>Boeynams</u> as to Boeynams and the Cohens with prejudice.  However, for the reasons described above, the Court will deny Defendant's Motion to Dismiss Count I as to Silver and allow Silver to file a Third Amended Complaint consistent with this Court's opinion.  Further, the Court will deny Defendant's Motion to Dismiss Count I in <u>Vaughn</u> and allow Vaughn to join that Third Amended Complaint consistent with this Court's opinion.

### B.    Claims Under Pennsylvania's Health Club Act and Unfair Trade Practices and Consumer Protection Law

#### 1.    <u>Plaintiffs Cannot State a Claim under the Health Club Act</u>

The <u>Boeynams</u> Plaintiffs have asserted claims under Sections 2163, 2164, 2169, and 2175 of the Health Club Act.   Plaintiffs allege generally that LA Fitness's stated policies are "unfair, abusive, and deceptive" and, the contract as written is "misleading" for the reasons stated in the breach of contract claim and because 1) the 30  and 20 day notice provisions are designed to extract additional monthly dues from members and because LA Fitness has the ability to impose a 5-day notice period; 2) the Agreement is deceptive in stating that written notification is necessary, while failing to disclose the need for use of the preprinted form; and 3) the Agreement language that "no further billing will occur" after receipt of cancellation is misleading and

deceptive.  Boeynams Compl. at  ¶ 106.  Plaintiffs allege that these policies violate the Act's

prohibition against "misleading information, representation, or advertisement," Section 2169,[3]

and, therefore, also constitute a violation of the UTPCPL.  Id. at ¶¶ 07-108.

Plaintiffs allege, as well, that the policies of LA Fitness violate the prohibition at Section

2164(b)[4] against "automatic renewal clauses," and the prohibition at Section 2163(d)[5] requiring

that members be provided with signed copies of their agreements.  Id. at ¶¶ 109-10.  Plaintiffs

allege that any violation of these Sections also constitutes a violation of the UTPCPL.  Id. at ¶

111.

Defendant responds by arguing that the provisions relied upon by Plaintiffs are only

applicable to "health club contracts" and, according to Defendant, Plaintiffs have not entered into

"health club contracts."  See Def.'s Br. at 19-23.  Defendant contends that based on the definition

of "health club contracts" contained at Section 2162 of the Act, the statute only applies to

contracts "obligating members to 'more than three months.'" Id. at 20.

Section 2162 of the Act defines a "[h]ealth club contract" as "[a]n agreement in which the

buyer of the health club services purchases, or becomes obligated to purchase, health club

services to be rendered over a period of more than three months, whether or not the health club is

---

[3] 73 Pa. Cons. Stat. § 2169 states that "[a] health club contract entered into by the buyer
due to false or misleading information, representation or advertisement of the health club or its
agents shall be voidable at the option of the buyer."

[4] 73 Pa. Cons. Stat. § 2164(a) defines the "maximum term of a health club contract" to be
36 months.  Subdivision (b) states that "No health club contract may contain an automatic
renewal clause, unless the contract provides for a renewal option for continued membership
which must be affirmatively accepted by the buyer at the expiration of each contract term."

[5] 73 Pa. Cons. Stat. § 2163(d) states, in relevant part that a copy of every "health club
contract . . . shall be delivered to the buyer at the time the contract is executed."

completed or operational."  There is no case law addressing the provisions relied upon by

Plaintiffs and the parties have provided no relevant legislative history for these provisions, in

particular, or the statute generally.

In <u>Robinson v. Holiday Universal, Inc.</u>, No. 05-5726, 2006 WL 2642323 at *1 (E.D. Pa.

2006), Judge Pratter addressed the applicability of the Act to agreements, such as these, under

which a health club member is billed monthly.  The provision at issue in <u>Robinson</u> was Section

2165,[6] which requires initiation fees reasonably related to the cost of a "health club membership"

and prevents use of an initiation fee to "circumvent" other requirements of the Act.   Section

2165 refers to "health club membership[s,]" but does include the language "health club

contracts."

In holding that Section 2165 of the Act applied to these monthly-billed contracts, Judge

Pratter rejected the defendants' interpretation of the Act, which would have limited the reach of

that statutory provision to "heath club contracts" as defined by the Act.  So doing, she relied on

the broad reach and remedial purpose of the Act.  <u>Id.</u> at *3.  Judge Pratter acknowledged the

plaintiffs' allegation that their "contracts for health club services" were "automatically renewable

for periods lengthy enough to meet the three-month stint that the [defendants] emphasize[d]."

<u>Id.</u>  However, Judge Pratter made the distinction between "memberships" and "contracts for

health club services" and a "health club contract" as defined pursuant to Section 2162.  She went

on to state that the "language of Section 2165 suggests that the [Act] applies to more than health

---

[6] 73 Pa. Cons. Stat. § 2165 of the Act states that "[e]xcept as provided in section 13, the
amount of any initiation fees imposed by a health club shall be reasonably related to the club's
costs for establishing the initial health club membership. An initiation fee shall not be imposed
for the purpose of circumventing the requirements of this act. Initiation fees shall be included in
the computation of any refunds due under this act."

club contracts of three-months or longer duration."  <u>Id.</u>  The opinion discussed, as well, Section 2174, which requires "[e]very health club" to ensure that there is a person trained and certified in CPR on site at all times, but does not contain language limiting the provisions application to clubs entering into "health club contracts."

As Judge Pratter noted, the Act is directed at protecting consumers "from deceptive practices 'in connection with contracts for <u>health club services</u>[,]'" <u>id.</u> at *3 (citing 73 Pa. Cons. Stat. § 2162) (emphasis added), a term which is defined more generally by the statute, to mean "[s]ervices, privileges or rights offered for sale or provided by a health club." <u>Id.</u>  Similarly, "health club" is defined as an organization "in the sale of memberships" and is not limited to sale of "health club contracts."  <u>Id.</u>

This Court agrees with Judge Pratter as to the broad remedial purpose of the Act and the applicability of certain provisions beyond the context of "health club contracts."   However, this case is distinguishable from <u>Robinson</u> because each of the three statutory provisions relied upon by the <u>Boeynams</u> Plaintiffs applies specifically to "health club contracts," which are limited to situations in which a consumer "purchases, or becomes obligated to purchase, health club services to be rendered over a period of <u>more than three months</u>."  That is not the case here, where, at the outset of the Agreement, Plaintiffs assume a two-month obligation, under Defendant's interpretation, or a three-month obligation, under Plaintiffs' interpretation. Applying these provisions of the Act targeted at "health club contracts" to contracts of three months or under would appear to make the definition of "health club contract" at Section 2162 superfluous.

Furthermore, the Court infers from the limitation at Section 2164(a) of the duration of a "health club contract" to 36 months that the Legislature was concerned about automatic renewal of long term obligations, not monthly ones.  Further, requiring consent to automatic renewal every month, as would be required under Section 2164(b), appears to the Court an arduous requirement for both the health club and the member.  The Court does not find an automatic renewal policy under a monthly-billing scenario to be unfair,  uncommon, or a surprise to consumers, nor does it appear to be the type of requirement that the Legislature intended to impose.

At the November 19, 2010 hearing, the Court engaged in extended colloquy on the question of whether the Act applies to the Agreements at issue in this case.  On further consideration, the Court has determined that the specific provisions relied upon by Plaintiffs do not apply to the Agreements between the parties.  The Court concludes that Plaintiffs cannot state a claim under these provisions of the Act.

> **2.     Plaintiffs Do Not State a claim under the Unfair
> Trade Practices and Consumer Protection Law**

The Boeynams Plaintiffs state in their Response to Defendant's Motion to Dismiss that they have not asserted an independent claim under the UTPCPL.  Boeynams Pls.' Br. at 31. Based on the Court's ruling that the Health Club Act does not cover the Agreements in this case, the Boeynams cannot state a derivative claim under the UTPCPL.  The Boeynams Plaintiffs' statutory claims are dismissed with prejudice.

### C. Vaughn Has Stated a Claim under Florida's Deceptive and Unfair Practices Act

Vaughn brings a claim under Florida's consumer fraud law, the Deceptive and Unfair Practices Act, Fla. Stat. §§ 501.201 et seq. Vaughn alleges to be "unfair or deceptive acts or practices" the conduct that provides the basis for his breach of contract claim, namely that 1) the Agreement is not "monthly" but requires a three-month obligation; 2) requires 61-days notice for cancellation rather than the stated 30 days; 3) the Agreement provision stating that "no further billing will occur" following receipt of timely a cancellation notice is false because LA Fitness "bills members for at least one additional month in all cases;" 4) the 30 day notice provision is abusive, designed to extract additional dues from members, and unnecessary as LA Fitness has the "clear ability to impose" a 5-day cancellation policy; 5) the language of the Agreement is deceptive for failing to disclose the preprinted cancellation form requirement; and 6) LA Fitness "systematically ignores" all forms of written cancellation. Vaughn Compl. at ¶95. Unlike in Boeynams, Florida has no statute analogous to Pennsylvania's Health Club Act; thus, Vaughn relies simply on Florida's consumer protection law.[7]

Under the FDUTPA, any unfair or deceptive acts or practices committed in the conduct of any trade or commerce are declared unlawful. § 501.204(1), Fla. Stat. Section 501.211 of the

---

[7] A similar claim brought under Pennsylvania's UTPCPL, might be barred by Pennsylvania's economic loss rule. See DeFebo v. Andersen Windows, Inc., 654 F. Supp. 2d 285 (E.D. Pa. 2009) (Baylson, J.). However, while Florida bars a "plaintiff in contractual privity with a defendant [from] recover[ing] in tort for solely economic damages arising out of [a] breach of the contract, Geico Cas. Co. v. Arce 333, Fed. App'x 396, 397 (11th Cir. 2009), the economic loss rule does not preclude a statutory action brought pursuant to the FDUTPA. See Comptech Int'l, Inc. v. Milam Commerce Park, Ltd., 753 So. 2d 1219, 1223 (Fla. 1999); Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So. 2d 602, 609 (Fla. Dist. Ct. App. 1997).

FDUTPA confers a private right of action on any person who has suffered a loss as a result of such practices, providing actual damages, attorney's fees, and court costs.  See N. Am. Clearing, Inc. v. Brokerage Computer Sys., 666 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (Fawsett, J.) (citing § 501.211(2), Fla. Stat.).  A claim for damages under FDUTPA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."   Id. (citing City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008).

The Florida appellate courts additionally clarified that a "deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."  Fitzpatrick v. General Mills, Inc., 635 F.3d 1279, 1283 (11th Cir. 2011) (vacating a district court's decision to limit a class to "take individual reliance into account" as contrary to the statute) (quoting Office of the AG , Dep't of Legal Affairs v. Commerce Commer. Leasing , LLC, 946 So. 2d 1253, 1258 (Fla. Dist. Ct. App. 2007).  However, the second and third elements make clear that a plaintiff "must have been aggrieved by the alleged unfair and deceptive act."  Natural Answers, Inc. v. SmithKline Beecham Corp., 529 F.3d 1325, 1333 (11th Cir. 2008).

As to the first element, the Florida Supreme Court resolved a split amongst Florida appellate courts in PNR, Inc. v. Beacon Prop. Mgmt., 842 So. 2d 773, 777 (Fla. 2003), concluding that the FDUTPA applies even if the unfair or deceptive act involves only a single party, a single transaction, or a single contract.   The Florida Supreme Court was clear, however, that this decision did not "operate to convert every breach of contract or breach of lease case into a claim under the Act."  Id. at 777 n. 2.  "[C]onduct constituting breach of contract is actionable

-32-

under FDUTPA only if the conduct underlying the breach is, by itself, unfair or deceptive."
North American Clearing, Inc, 666 F. Supp. 2d at 1310 (citing PNR, Inc., 842 So. 2d at 777, n. 2;
Rebman v. Follett Higher Educ. Group, Inc., 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008)
(Antoon II, J.)).   Florida law defines an "unfair practice" as "'one that offends established public
policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to
consumers.' " Kenneth F. Hackett & Assoc.  v. GE Capital Info. Tech. Solutions, Inc., 744 F.
Supp. 2d 1305, 1312 (S.D. Fla. 2010) (Altonaga, J.) (quoting Rollins, Inc. v. Butland, 951 So. 2d
860, 869 (Fla. Dist. Ct. App. 2006).  "[D]eception occurs if there is a 'representation, omission,
or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the
consumer's detriment.'" PNR, Inc., 842 So. 2d at 777.

A party may not "rely solely on a violation [of a contract] as a basis for assertion of a
FDUTPA claim."  Hackett, 744 F. Supp. 2d at 1312 (quoting Rebman, 575 F. Supp. 2d at 1279).
However, a FDUTPA claim may "travel with a related breach of contract claim if the FDUTPA
claim challenges the acts underlying or 'giving rise' to the breach[.]"  Id.   For example, in Siever
v. BWGaskets, Inc., 669 F. Supp. 2d 1286, 1293 (M.D. Fla. 2009) (Fawsett, J.), the plaintiffs
survived a motion to dismiss by alleging that the defendants falsely represented that they had the
right to license use of a trade name and would protect plaintiffs' use of the trade name at the time
the parties entered into a contract for use of the trade name.  Relying on Siever, Judge Altonaga
later concluded that plaintiffs stated a claim in Hackett, 744 F. Supp. 2d at 1308, 1313, based on
allegations that the defendant finance company improperly engaged in a practice of increasing
minimum lease payments, using as leverage a default provision of the parties' equipment lease
agreement that allowed the finance company to repossess the equipment and require all payments

due if the plaintiffs did not pay the increase.  These actions were viewed by Judges Fawsett and Altonaga as allegations of unfair and/or deceptive schemes that arose out of the business relationship and constituted more than "mere breach."

The Court finds that certain of Vaughn's allegations cannot support his statutory claim, because either there is no basis upon which to find the alleged conduct to be unfair or deceptive or that Vaughn has not alleged damages as a result of the alleged conduct.  First, Vaughn cannot state a claim based on the allegation that LA Fitness represents the Agreement to be a "monthly" contract, but requires what Vaughn alleges to be a three-month obligation.  Assuming without deciding that this aspect of the Agreement was a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances," North American Clearing, Inc, 666 F. Supp. 2d at 1310, Vaughn has not alleged that he was in any way aggrieved by this conduct as his membership extended for at least twenty months before he attempted to cancel it.  Vaughn Compl. at ¶¶ 56, 59.

Second, Vaughn has not alleged damages based on Defendant's requirement of a preprinted cancellation form: he was informed of the requirement when he inquired about cancellation procedures, obtained the form on the same day, and used the form to send notice of cancellation.  Id. at ¶¶ 58-59.

Third, the Court concludes that Vaughn's allegation that the 30 day notice provision is abusive, given Defendant's "clear ability to impose" a 5-day cancellation policy is meritless.  The Court finds no basis upon which to conclude that imposing a 30 day cancellation policy, set out explicitly in the terms of the Agreement, is either against public policy or capable of misleading a reasonable person.

Finally, the Court concludes Vaughn cannot state a claim based on the allegation that the Agreement's "no further billing will occur" provision is false because LA Fitness bills members for at least one additional month in all cases.  Id.  As explained earlier in this opinion, the Agreement states clearly that the last month's dues are to be prepaid upon entering the Agreement.  LA Fitness applies that month's dues after receipt of cancellation to "extend [the] membership expiration by an additional 30 days or more."  Vaughn Ex. A.  However, putting aside the failure to timely process Vaughn's own cancellation notice, addressed below, there is no allegation that LA Fitness engages in a practice of charging members' credit cards after receipt of cancellation in a manner contrary to the terms of the Agreement.

As to the allegation that LA Fitness "systematically ignores" all forms of written cancellation, see Vaughn Compl. at ¶95, Defendant contends that Vaughn is attempting to convert "a straightforward breach of contract claim into a violation of FDUTPA."  Vaughn Def.'s Br. at 5.

Defendant relies on Rebman, 575 F. Supp. 2d at 1274-75, in which the defendant operator of a campus bookstore functioned under an agreement with the college not to charge more than 75% of the new textbook price for used textbooks and to purchase back used textbooks at not less than 50% of the retail price.  College students brought a putative class action against the operator of a campus bookstores for overcharging students for purchase of text books and underpaying students for the sale of books back to the store, based on a practice of rounding up or down the purchase or sale price.  Id.  The Court granted summary judgment to the defendant based on a determination that representative plaintiffs' sole challenge to the "rounding practices" was that the practice led "to a used textbook price that is inconsistent with the express terms of

-35-

the Agreement."  Id. at 1279.  The plaintiffs did not challenge the act giving rise to the breach –

the "rounding practice" – as unfair or deceptive, and only challenged "the act of breaching" the

Agreement[.]"  Id.  Judge Antoon noted that, "[t]his [was] precisely the type of breach of

contract claim that cannot be converted to a claim under FDUTPA."  Id.

Vaughn has alleged that his notice of cancellation was postmarked more than 30 days

prior to the September 17, 2010 billing date and "reasonably expected . . . that his monthly dues

billing would stop in August 2010," but that Defendant was still billing his credit card as of

February 14, 2011.  Vaughn Compl. at ¶¶ 59, 61.  Vaughn informed Defendant of his situation on

February 15, 2011, Defendant billed Vaughn on February 15, 2011, cancelled the membership,

and eventually refunded only the final payment.  Vaughn Compl. at ¶¶ 65-66.  This Court has

determined that Vaughn has stated a claim for breach based on these facts, due to Defendant's

failure to timely process Vaughn's cancellation notice and the resultant unrefunded charges to

Vaughn's credit card.

Had Plaintiff simply alleged a failure to timely process his notice of cancellation, this

Court would be inclined to follow Rebman and conclude that Vaughn was holding up the "act of

breaching the Agreement" as the unfair or deceptive act.  However, Vaughn's Complaint states

that "LA Fitness systematically ignores cancellation notices in all forms . . . in order to continue

improperly billing members."  Id at ¶ 95.  Thus, as required by PNR, Inc., 842 So. 2d at 777, n. 2,

Vaughn has asserted a challenge to the conduct underlying the breach for Vaughn has challenged

not simply the failure to process the cancellation in his case, but an alleged company policy.  The

Court views the allegation of a wider policy or practice of ignoring written cancellation notices

for the purpose of collecting additional dues to be "a claim of underlying deceptive and unfair

-36-

business practices characteristic of FDUTPA claims" and sufficient to survive Defendant's

Motion to Dismiss.  Hackett, 744 F. Supp. 2d at 1313.  As Vaughn alleges this scheme to have

resulted in a failure to process Vaughn's own cancellation and his having been overcharged for

several months, the Court finds that Vaughn has further satisfied the causation and damages

elements of this claim.

Finally, Vaughn alleges that the cancellation policy is an unfair and deceptive practice

because it requires 61, rather than the stated 30, days notice prior to cancellation in order to

receive the benefit of the last month's prepaid dues.  Id. at ¶ 95.  Vaughn's Agreement states that

"If the [cancellation] notice is postmarked at least 30 days prior to [the member's] next billing

date, no further billing will occur.  If the notice is postmarked less than 30 days prior to [the

member's] next billing date one or more billing will occur.  In either case, [the member's] last

month's prepaid dues will extend [the] membership expiration by an additional 30 days or more,

depending on your original sign up date."  Vaughn Ex. A.  Vaughn alleges that he "reasonably

expected that after he mailed his cancellation to LA Fitness in late July or early August 2010, that

his monthly dues billing would stop in August 2010 and that his membership would expire by

September 2010."  Vaughn Compl. at ¶ 66.

The Court stands by its conclusion that the legal interpretation of these provision is clear:

if a member, such as Vaughn, pays the last month's dues up front, LA Fitness is obligated to

cease billing after receipt of timely written notice of cancellation – 30 days prior to the billing

date of September 17, 2010, in Vaughn's case.  The last month's dues would then be applied to

the month following, extending the membership an additional 30 days from September 17 to

October 17, 2010.  The Court further sees no basis upon which to find this practice against public

policy or "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."

PNR, Inc., 842 So. 2d at 777.

However, under the statute, the Court must also ask objectively whether such a policy constitutes a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" Id.  Construing the facts in the light most favorable to Vaughn, the Court finds that the cancellation policy is confusing and has the potential to mislead reasonable LA Fitness members.

By signing an Agreement with LA Fitness, a member has only committed to a two month period of membership.  However, to limit one's membership to this two month period, a member must basically cancel the membership on the date upon which the member has signed up.  To limit the member's obligation to three months, a member must cancel before the end of the first month.  Moreover, reasonable LA Fitness members could infer from the "no further billing" and 30 day notice language that they have done their due diligence by mailing timely written notice 30 days prior to the date upon which they wish their membership to cease.  In fact, such members would be misled in understanding that they would not have to both pay dues for the month during which the cancellation notice is received and have their last month's dues applied for the next month.  Such members who, like Vaughn, intend their memberships to cease at the end of the month of September and cancel accordingly, in August, would not understand that they had to plan an additional month in advance and would, like Vaughn, not receive the benefit of their last month's prepaid dues.  Under the objective test required by Florida law, the Court finds that Vaughn has stated a claim based on this theory.

In this Court's Order of August 18, 2011 (No. 10-2326, ECF No. 32), the Court stated that Vaughn's statutory claim would be dismissed without prejudice.  Upon further consideration, the Court has concluded that it will deny Defendant's Motion to Dismiss on Count II in Vaughn.  Thus, the Court will allow Vaughn file an Amended Complaint so as to reinstate his statutory claim, consistent with this Court's opinion.

### D.        Plaintiffs Cannot State a Claim for Unjust Enrichment

Plaintiffs allege, based on the facts underlying their breach of contract claims, that "LA Fitness has been unjustly enriched through the collection of monthly memberships dues that . . . it was not entitled to collect."  Boeynams Compl. at ¶¶ 119-22.  Plaintiffs have not alleged additional facts to support this claim and simply aver that"[t]hrough its practices, LA Fitness charges monthly dues for services which members do not use" and, as a result, Plaintiffs are entitled to restitution of these funds.  Id. at ¶ 122.

To state a claim for unjust enrichment under Pennsylvania law, the plaintiff must allege "'benefits conferred on one party by another, appreciation of such benefits by the recipient, and acceptance and retention of these benefits under such circumstances that it would be inequitable [or unjust] for the recipient to retain the benefits without payment of value.'"  Allegheny Gen. Hosp. v.. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000) (quoting 16 Summary of Pa. Jur. 2d Commercial Law § 2.2 (1994)).  Unjust enrichment is a " 'quasi-contractual doctrine'" that does not apply in cases where the parties have a written or express contracts.  Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) (quoting Benefit Trust Life Ins. Co. v. Union Nat'l Bank, 776 F.2d 1174 (3d Cir. 1985)).

Plaintiffs are correct that a plaintiff is permitted to plead alternative theories of recovery based on breach of contract and unjust enrichment.  AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC, Civ. A. No. 10–6087, 2011 WL 3241356, at *3 (E.D. Pa. July 29, 2011) (Jones, II, J.).  However, party may only do so where there is a "question as to the validity of the contract in question."  Id. (dismissing a claim for unjust enrichment where neither party contested the validity of the written contract).

The same principle applies under Florida law.  1021018 Alberta Ltd. v. Netpaying, Inc., No. 8:10–CV–568–T–27MAP, 2011 WL 1103635, at *6 (M.D. Fla. Mar. 24, 2011) (Whittmore, J.) ("Alternative pleading 'allows for a plaintiff's case to proceed in the face of uncertainty as to the existence of a contract or, perhaps, uncertainty as to whether the particular issue at hand falls within the ambit of a contract that otherwise exists between the parties.'") (quoting Donnelly v. Circuit City Stores, Inc., No. 5:06–cv–3 87–Oc–10GRJ, 2007 WL 896337, at *3 (M.D. Fla. Mar. 22, 2007).

Where, as in this case, neither party contests the validity of the Agreement, and "any recovery would be determined on the basis of that contract alone," an unjust enrichment claim is precluded.  AmerisourceBergen Drug Corp., WL 3241356, at *3; see also Moynet v. Courtois, 8 So.3d 377, 379 (Fla. Dist. Ct. App. 2009) ("[W]here there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment.") (citing Diamond "S" Dev. Corp. v. Mercantile Bank, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008))

The Court has granted Defendant's Motions to Dismiss Count III in Boeynams and Count III in Vaughn.  Plaintiffs' unjust enrichment claims are hereby dismissed with prejudice.

**VI.**    <u>**Conclusion**</u>

For the foregoing reasons, Defendant's Motion to Dismiss Count I of the <u>Boeynams</u>

Plaintiffs' Second Amended Complaint will be granted with respect to Boeynams and will be

denied with respect to Silver.  Defendant's Motion to Dismiss Counts II and III of the <u>Boeynams</u>

Complaint will be granted.  Defendant's Motion to Dismiss Vaughn's Complaint will be denied

as to Counts I and II and granted as to Count III.  Plaintiffs Silver and Vaughn may file an

amended complaint within 30 days of the issuance of this Memorandum.

An appropriate Order follows.


O:\CIVIL 09-10\10-2326 Boeynaems v. LA Fitness\Boeynaems v. LA 10-2326 Vaughn 11-2644 MEMORANDUM
on MTD.wpd